# UNITED STATES DISTRICT COURT
## District of Oregon

Case No. 6:13-cv-00469-TC

The Thompson Film, LLC

    Plaintiff,

v.

Does 1-155,
    Defendants,
_____/

## DEFENDENT DOE'S 1-155
## TO QUASH SUBPOENA

I, John Doe #151 Defendant, in the above styled hereby files the following motion to quash subpoena issued to Charter Communications LLC. As set forth in the memorandum in support attached hereto.

Dated: May, 2nd 2013

Respectfully submitted,

*[signature]*

John Doe #151
IP: 71.92.150.43
Pro Se

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON
EUGENE DIVISION


| | |
|---|---|
| The Thompson Film, LLC<br>Plaintiff,<br>vs.<br><br>DOES 1-155,<br>Defendants.<br>_____/ | CASE No. 6:13-cv-00469-TC<br><br>MOTION TO QUASH OR MODIFY SUBPOENA |

## MEMORANDUM IN SUPPORT
## BACKGROUND

On April 23, 2013 I, John Doe #151 (IP# 71.92.150.43) , received a letter from my ISP (Charter) regarding a subpoena, which included a copy of the Order Granting Plaintiff's EX PARTE MOTION TO EXPEDITE DISCOVERY (D.E. #6). From accounts of previous defendants of Jonathan T. van Heel, Crowell Law and other such practices, these subpoenas notifications are followed by demands of thousands of dollars to avoid dealing with their lawsuit is the reasoning for filing this motion, and for this reason, I respectfully request that I be allowed to do so without revealing my personally identifying information.

To cut court costs while suing as many individuals as possible, Plaintiff's counsel, Jonathan T. van Heel (Formerly Crowell Law) is using improper joinders in their mass lawsuits alleging copyright infringement through BitTorrent. In another case relating to Crowell Law, *Voltage Pictures, LLC v. Does 1-371 case 3:13-cv-00295-AA,* Judge Ann L. Aiken noted this:

> "Plaintiff has only had to pay $1,400 in filing fees as opposed to $215,250," she wrote.
>
> "In addition, the court is mindful of the growing popularity of copyright holders to use courts as a tool for identifying alleged infringers as a means to seek quick settlements without actually litigating the cases in court,"

These lawsuits include hundreds of defendants in the District of Oregon. As well the Plaintiff in the current case (The Thompson Film, LLC) also has mass lawsuits in Ohio, Colorado, Florida, Illinois, Washington and Missouri. Jonathan T. van Heel's mass lawsuit BitTorrent case which nearly identical to this one, *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255,* and in this case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap — if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

## ARGUMENT

### 1) Plaintiff Has Improperly Joined 155 Individual Defendants Based on Entirely Disparate Alleged Acts

The Plaintiff's joinder of 155 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in both the RIAA cases and elsewhere. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203,* No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against

them must arise from a single transaction or a series of closely related transactions. Specifically:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP

and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since

2002.[1]

Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

Additionally there are numerous hash numbers associated with this case as follows:

#4c55A9C583CDC447A14CF245BBD9C1F3AAA30C2,

#88144855EEC090F98A93D85547BD540A8EF50716,

#E9B2E49113086845E0F92FC5B06D2CFAE44731D4,

These are dissimilar hash numbers linked to different Does of a single case filing. In this instance, there is no way Does associated with one hash number could have shared data with a Doe of a dissimilar SHA1 File Number (Hash Number).

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 2-155, from the case.
See Fed. R. Civ. P. 21.

## 2) The subpoena received by Charter is over broad and Does are ambiguous.

As explained in the Court's "Order Granting Plaintiffs Motion for Expedite Discovery"(D.E. #6) filed in the instant case on March 20 2013, Plaintiff intends its early

---

1  http://gondwanaland.com/mlog/2004/12/30/deployment-matters/

discovery be "for the limited purpose of identifying these Doe Defendants." However, the subpoena received by Charter and sent to Defendant requests to be acquiesced from Charter "All basic subscriber information related to the twenty-two(22) IP Address below." Plaintiff has gone beyond the limited purpose of identifying the Does by asking for unreasonable amounts of information. In order to comply with the Court order, Charter may provide more information than is necessary for Plaintiff to effect service. In order to effect service, all Plaintiff needs is Doe's name and address. The subpoena in the instant case does not have the narrow scope of the information sought. A narrow scope would be Plaintiff requesting just the names and addresses used to identify the user of the IP addresses on the date and time listed. Plaintiff requests significantly more information and therefore, this subpoena is over broad. Further. The subpoena received by Charter is over broad in that there is no proof that the person whose information the Plaintiff receives acted in any way to violate any copyright law. At most, Plaintiff may be able to implicate an unknown computer rather than a person.

Additionally Does 1-155 defendants are being a "group" together as identified through the complaint:

> "26. Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected and used for illegal copying and illegal distribution of plaintiff's motion picture.
> 27.    The defendants, and each of them, have illegally and without authorization from plaintiff
> copied, downloaded, shared and uploaded plaintiff's motion picture using the BitTorrent system.
> 28. The defendants and each of them have been identified as infringing plaintiff's copyrights
> in this district."

from the granting order (D.E. #1):

> "On March 19, 2013 plaintiff filed a complaint copyright infringement and demand for jury trial against Does 1-155 defendants."

Considering the Plaintiff has filed the lawsuit (6:13-cv-00469-TC) in this court, one can

assume this clerical error is the byproduct of this mass litigation, but it should be clarified if moving forward to disambiguate the actual targeted Defendants in the instant case.

3) **Internet Protocol ("IP") addresses do not – by themselves – qualify as personal information, capable of accurately identifying an individual.**

An IP address does not accurately identify a person. In *VPR Internationale vs. Does 1-1017* (No. 2:2011-cv-02068), Judge Harold A. Baker writes in an order denying expedited discovery:

> Plainly stated, the court is concerned that the expedited *ex parte* discovery is fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

from an opinion in his response to an interlocutory appeal (bold added for emphasis):

> In this case, not a single one of the plaintiffs 1,017 potential adversaries has been identified. There is no adversarial process yet. Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. **Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers Wi-Fi connections** (including a secure connection from the State University of New York.) See Carolyn Thompsons, Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks (April 25, 2011).
>
> The list of IP addresses attached to VPR's complaint suggest, in at least some instances, a similar disconnect between IP subscriber and copyright infringer. The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an Ip address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. **The Infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.**
>
> VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas. **The potential filing of a motion to quash is no reason**

> **to abandon the adversarial process.** As VPR points out, ex parte motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed. In at least one case, counsel has sought leave to amend the complaint to add more Doe defendants. SeeLightspeed Media Corp. v. Does 1-100, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101-1000 as defendants). In Hard Drive Productions, Inc. v. Does 1-1000, counsel sought leave to dismiss more then 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff.

In questioning whether expedited discovery could be used to extort quick settlements, even from people who have done nothing wrong, Judge Baker states that:

> "[t]he embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether the plaintiff VPR has competent evidence to prove its case."

*VPR Internationale vs. Does 1-1017* (No. 2:2011-cv-02068)

**4) Undue Burden**

1) Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) a subpoena shall be quashed or modified if it subjects a person to undue burden. Doe asserts being subject to an undue burden in being a target of this civil action, when there is a substantial likelihood that the plaintiff will be unable to establish that Doe was actually the person responsible for any files transferred at the times alleged, or that Doe Copied, distributed, or otherwise infringed on a protected work owned by the plaintiff. Furthermore, the removal of Doe's cloak of anonymity will subject him to intrusive public scorn as an alleged unlawful copier of Plaintiff's work.

2) Even if it is construed as issuing from the U.S.D.C. for the District of Oregon, it must be quashed under Rule 45(c)(3)(A)(ii), because it requires Custodian of Records of Charter, Located in Saint Louis, Missouri, to produce documents at the office of Plaintiff's counsel in Salem, Oregon, which is more than 150 miles away.

### 5) Basic Fairness and Due Process

The Charter Subpoena should also be quashed because it fails to sufficiently verify the validity of the information forming the basis of the request. The accuracy of the data is tenuous and unsubstantiated. Insufficient evidence has been produced for a prima facie demonstration that the investigation techniques of the plaintiff have any degree of accuracy in implicating this Doe in the alleged infringement. As it stands (D.E. #6) violates due process by allowing the identified Defendant to be subjected to the Plaintiff's direct discovery and/or interrogatories without being formally served the complaint, the filling of responsive pleadings by the Defendants or a rule 26(f) conference between parties.

# Conclusion

Plaintiff's action is an abuse of the judicial system and nothing more than an attempt to take advantage of 155 defendants in this action. The Plaintiff has attempted to circumvent traditional civil procedure by joining defendants that share to common facts, while Plaintiff's simultaneously has avoided the costly filing fees. I have not to this day received a formal complaint regarding this case as I was forced to receive a copy of the complaint via an online legal research database to understand why I received this notice in the mail in the first place. After I reviewed the complaint, I utilized Google and began searching Jonathan T. van Heel and the Plaintiff (The Thompsons Film, LLC). I have seen numerous postings about complaints of this behavior and use of intimidation to force a settlement out of honest Americans.

My hope is that this Court will see through the Plaintiff's practices as being nothing more than a strategy of coercion, harassment and scare tactics. If this action is allowed to proceed forward, many thousands of the countless millions of internet users, or other

"defendants" will be dragged into lawsuits such as these, simply to use the same tactics to extract money from legally unknowledgeable people, "guilty" or not.

WHEREFORE, Defendant John Doe #151 respectfully prays the Court GRANTS Defendant's Motion and provide the Defendant the following relief:

1) Dismiss the Defendant due to plaintiff's failure to make a *prima facie* showing of copyright infringement, proper joinder of the 155 defendants, and proof that Defendant did in fact access the Work via the reported IP address;
2) Quash the subpoena at issue;
3) To the extent a subpoena is not quashed, grant a protective order sealing and preventing the disclosure of any information obtained through a subpoena; and,
4) Provide any further relief to Defendant that is just and proper.

Dated: May 3rd, 2013

Respectfully submitted,

John Doe #151
Pro se
IP: 71.92.150.43

# CERTIFICATE OF SERVICE

I hereby certify that on 5/02/2013, I served a copy of the foregoing document, via US Mail, on:

>Jonathan T. van Heel
>thompsons@kite.com
>Carl D. Crowell, OSB No. 982049
>Email: crowell@kite.com
>Crowell Law
>943 Liberty St. SE
>PO Box 923
>Salem, OR 97308
>Telephone: (503) 581-1240

And Charter Communications Inc:

>Legal – File-Sharing Team
>Legal Department
>12405 Powerscourt Dr.
>St. Louis, MO 63131-3673
>Fax: (314) 909-0609
>Telephone: (866) 228-0195

Dated: May, 2nd 2013                    Respectfully submitted,

*[signature]* #151

John Doe #151
IP: 71.92.150.43
**Pro Se**